Michael E. Klicpera (SBN:  164005)
P.O. Box 573
La Jolla, California 92038
Telephone:  619.980.8680
Facsimile:  858.456.8066

Attorney for Plaintiff  Patent Technology, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Patent Technology, LLC., a Wyoming Corporation, )<br><br>Plaintiffs,<br><br>vs.<br><br>Lawrence Woodman, Perfect Trust Express and Security Company,  GT Express and Security Company, Tao Olagoke A., and Does 1-50<br>Defendants | Case No.<br><br>Assigned for all purposes to the Honorable Unknown<br><br>**Breach of Contract,**<br><br>**Money Had and Received,**<br><br>**Fraud.** |

**FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

1.      **Jurisdiction.**  This court has jurisdiction over this complaint because the cause of action

arose under the law of the United States.

2.      **Venue.**   Venue is appropriate in this court because there is a diversity of citizenship between

the Plaintiff and all the Defendants, the amount in controversy is greater than $75,000 in accordance

with 28 U.S. Code § 1332, the cause of action occurred in Contra Costa County, and a substantial

amount of the acts and omissions giving rise to this complaint occurred in this district.

3.      **Intradistrict Assignment.** The Intra-district Assignment for the  United States District

Court, Northern District of California is the San Francisco/Oakland Courts as the cause of action

occurred in the county of Contra Costa.

4.      Plaintiff  is and at all times mentioned herein was a Corporation established in the state of Wyoming and conducts business activities in the city of San Diego in the County of San Diego, California, and Danville in the county of Contra Costa, California.  Michael Klicpera is the principal officer of the Plaintiff.  All activities associated with the cause of action occurred in the county of Contra Costa County, California

5.      AIG Imports and Exports is an associated company, agent or service provider for PT Express and Security Company and a potential defendant regarding this complaint.

6.      GT Express and Security Company is a agent or service provide associated with PT Express and Security Company and has offices in Kuala Lumpur, London England, Austin, Texas and Miami, Florida, USA, and is a defendant in this complaint.

7.      Josephine N. Adika is an individual living in Albertville,  Minnesota, an associate of Mary Juliet Smith, and a potential defendant/witness in this complaint.

8.      Lawrence Woodman is an employee or agent of PT Express and Security Company and a resident of Sunderland, United Kingdom and a defendant in this complaint.

9.      Malaysian Bank is located in Kuala Lumpur and New York, NY, USA and was the primary agent for receiving and transferring money transactions in accordance with this complaint and is a potential defendant in this complaint.

10.     Marry Juliet Smith is an individual allegedly born and lived in Las Cruces, New Mexico, allegedly currently residing in Malaysia, and a potential defendant regarding this complaint.

11.     An alleged property lawyer named Mr. McCandles who is allegedly associated with Marry Smith's father's estate and is a potential defendant in this complaint.

12.     PT Express and Security Company is a corporation that has their main office in Kuala Lumpur, Malaysia, and London, United Kingdom that conducts substantial business, or has agents in the United States and is a defendant in the complaint.

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

13.     Tao Olagoke A. is an individual agent or service provider for PT Express and Security Company who resides or has a business in Chicago, Illinois and a defendant in this complaint.

14.     The true names and capacities, whether individual, corporate, associate, or otherwise of defendants named herein as Does 1 through 50, inclusive, are unknown to Plaintiff who therefore sues these defendants by such fictitious names.  Plaintiff will amend this Complaint to show the true names and capacities of these defendants when the same have been ascertained. Plaintiff is informed and believes that each fictitiously named defendant is responsible in law and in fact for the obligations alleged herein.

15.     Plaintiff is informed and believes and thereon alleges that at all relevant times each of the defendants was acting within the scope and course of his or her agency and employment.

16.     The contractual agreement upon which this action is based was made and was to be performed in the County of Contra Costa, State of California. That contractual agreement provides that the County of Contra Costa is the proper venue for any action arising out of the agreement whereby all Plaintiff's reside and the claims arose.

17.     On or about April 5, 2013, Plaintiff and Marry Juliet Smith, communicated using Microsoft Skype, entered into an agreement whereby Plaintiff agreed to received and become the Receiver/Claimant of a trunk which contained $1,200,000 USD in cash from the sale of defendant Marry Juliet Smith father's stock grant from "Colgate".  Marry Juliet Smith conveyed that her father, Dennis M. Smith recently passed away and was survived by her mother Rosemary.  Marry Juliet Smith conveyed that she was only surviving child that had sole rights to her father's estate including the stock grants and real estate in the United States.  Marry Juliet Smith initially agreed to compensate Plaintiff $20,000 USD for his services.  Marry Juliet Smith, by Microsoft Skype requested that Plaintiff send her $2500 USD for purchasing an anti-Terrorist Certificate (see Exhibit 1) and $8600 for Malaysian Tax needed for transporting the trunk to the United States (see Exhibit

2).  At this time, Defendant Marry Juliet Smith agreed to send $50,000 from the trunk to Plaintiff  to assist in making these payments.

18.     On April 6, 2013, Michael Klicpera conducted a search to confirm the facts presented by Marry Juliet Smith and found that Dennis M. Smith and wife Rosemary were listed on a Colgate Connect listing Marriages and Deaths and located that Dennis M. Smith apparently died in 2012 and was survived by his wife Rosemary (see Exhibit 3, page 6).

19.     On April 8, 2013, Marry Smith provided Michael Klicpera her flight itinerary to return to the United States (see Exhibit 4).

20.     On April 16, 2013, Defendant GT Express and Security Company sent Michael Klicpera an email attaching the shipment airway bill designating me as the Receiver and a Certificate of Deposit designating me as the Claimant. (see Exhibit 5).  The email also expressed that the trunk shipment was delayed as an insurance policy was necessary and that $9720 USD was needed to purchase insurance for the trunk (see Exhibit 6).

21.     On April 16, 2013, Michael Klicpera conducted a web search on GT Express and Security Company and found information about the company supported its legitimacy (see Exhibit 7).

22.      On April 16, 2013, Marry Juliet Smith and the Plaintiff agreed to tender the payment and receive the trunk in the San Francisco airport. Marry Juliet Smith as Plaintiff to pay for the insurance and told me that she would be hiring a courier service to deliver the trunk to Michael Klicpera. Plaintiff sent $9820 USD to Marry Juliet Smith as promise to pay the amount back with interest (see Exhibit 8). The Plaintiff recorded the loan payment and interest payment in an Excel file.

23.     On April 16, 2013, during a Skype conversation, Ms. Marry Juliet Smith stated that her dad's company, a business professional who invested in "Colgate", paid the entire $1,200,000 "right in front and they sealed up in a box, I was not allowed to take any money from the box with a

reasonable explanation" .  Ms. Marry Juliet Smith then stated that because the box was sealed, she could not send the $50,000 USD originally promised.

24.     On April 18, 2013, an agent from the courier service PT Express and Security company called Michael Klicpera and required $23,000 USD to deliver the trunk.  They wanted $11,500 immediately and $11,500 USD upon delivery to the San Francisco Airport.

25.     On April 18, 2013, Michael Klicpera contacted Marry Juliet Smith and she assured that the Courier Service was a legitimate business and that these were standard costs.  She asked Plaintiff to secure loans for this payment and that she would pay the entire payment with interest on all loans from the cash in the trunk.

26.     On April 18, Plaintiff tendered $11,500 USD to Mary Juliet Smith through Wells Fargo wire service to Maybank and then to a payment receiver Norbaizura Binti Bahari for the PT Express and Security courier service delivery payment (see Exhibit 9).  Ms. Marry Juliet Smith allegedly obtained the money from this payment receiver and tendered the cash to the courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

27.     On April 22, 2013, Plaintiff received and email from PT Express and Security courier service that the shipment had arrived in the San Francisco Airport and that a $11,555 USD balance payment for the destination duties/custom clearance fee was due.  I was assured that upon making this payment, the consignment trunk would be delivered (see Exhibit 10).

28.     On April 22, 2013, after confirming with Ms. Marry Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $11,500 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Norzamini Binti Roslan (see Exhibit 11).  Ms. Marry Smith allegedly obtained the money from this payment receiver and tendered the $11,500 USD cash to the courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

29.     On April 22, 2013, Plaintiff received and email from PT Express and Security courier service that the shipment had arrived in the San Francisco Airport and that a $11,500 USD balance payment for demurrage fee was due (See Exhibit 12).  Plaintiff was instructed to deposit the money directly into the Logistic Department Branch Office Bank of America account in New York.

30.     On April 22, 2013, after confirming with Ms. Marry Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $11,500 USD directly to defined Bank of America account number and sent a copy of the correspondence to PT Express and Security courier service.

31.     On April 23, 2013, Plaintiff used the GTEX website to trace and trace the package for which Michael Klicpera was defined as the receiver (Exhibit 13).

32.     Then on April 23, 2013, the PT Express and Security company courier service sent another email stating that proof of the $20,140.00 USD was required (See Exhibit 14).

33.     On April 23, 2013, after confirming with Ms. Marry Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a partial payment of $10,000 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Norzamini Binti Roslan (see Exhibit 15).  Ms. Marry Smith allegedly obtained the money from this payment receiver and tendered the $10,000 USD cash to the PT Express and Security company courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

34.     On April 23, 2013, Michael Klicpera received and email from PT Express and Security courier service stated that proof of payment was acknowledged and the consignment trunk would be dispatched and "delivered to your door step" (see Exhibit 16).

35.     On April 24, 2013, Michael Klicpera received and email from PT Express and Security courier service stated that the "Customs Section has refused to stamp your consignment due to the

half payment been paid, you are hereby required to make the full payment as soon as possible"  (see Exhibit 17).

36.     On April 24, 2013, Michael Klicpera sent a letter to the Maybank in Malaysia where the money wires were sent inquiring about several of the transactions that went thought their bank and provided the bank names and account numbers of Norbaizura Binti Bahari and Norzamini Binti Roslan and inquired whether these were fraudulent activities.   Plaintiff never received a response to this letter nor was the letter returned to the listed address by the post office for failure to deliver the letter (Exhibit 18).

37.     On April 25, 2013, after confirming with Ms. Marry Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered what they believed to be a final payment of $10,850 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Nobaizura Binti Bahari (see Exhibit 19). Ms. Marry Smith allegedly obtained the money from this payment receiver and tendered the $10,850 USD cash to the PT Express and Security company courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

38.     On April 29, 2013 Michael Klicpera received an email from the PT Express and Security company courier service stating that "This is to bring to your notice that we have received the authorized stamped from the Custom Section from Kuala Lumpur, Malaysia that your payment has been made and that your consignment of Sort Code: X183 STTSC-48 PIN 3000 has been stamped and passed through Customs and now it is ready for delivery, we hereby inform you that your consignment will be dispatched and deliver to your door step as soon as possible." (see Exhibit 20).

39.     On April 29, 2013, Michael Klicpera received a email from a Dr. Mohammed Rush of Malaysia that Marry Smith had been taken to the hospital on the night of April 27, 2013 for stress related illnesses (see Exhibit 21).

40.     On April 30, 2013, Michael Klicpera received another email from Dr. Mohammed Rush of Malaysia informing the Plaintiff that Marry Juliet Smith's bill of $3941.00 USD was due and the Marry Juliet Smith stated that Plaintiff was to receive the trunk on Wednesday, April 30, 2013 at which time she stated arrangements could be made to pay the invoice (see Exhibit 22).

41.     On May 2, 2013, the PT Express and Security company courier service's Agent Lawrence Woodman sent Michael Klicpera an email stating that "there has been imposed and been charged for dummurage (sic), due to the delay at the transit port, and there is no way we can get it out to you and then you can pay us, but the storage law and the rules and regulations will not allow us to do that therefore, you are charged with the dummrage (sic) fee of $23,100 USD".   Plaintiff argued that it had nothing to do with the delay, Plaintiff had tendered all payments and thus demanded that the consignment be delivered.  PT Express and Security company stated on April 29, 2013 "that the now it is ready for delivery, we hereby inform you that your consignment will be dispatched and deliver to your door step as soon as possible".  but now they that wanted a demurrage fee for their own delay.  On May 2, 2013, PT Express and Security company courier service's Agent Lawrence Woodman sent Michael Klicpera an email stating that the demurrage fee of $23,100 USD must be paid to AIG Imports and Exports (see Exhibit 23).

42.     On May 3, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $23,100 USD to through Wells Fargo bank to potential defendant AIG Import and Export's Wells Fargo bank for transfer to the PT Express and Security company courier service account file (see Exhibit 24).  The Plaintiff recorded the loan payment and interest payment in an Excel.

43.     On May 3, 2013, the PT Express and Security company courier service acknowledged, through an email, the receipt of the payments and assure deliver as soon as possible. (See Exhibit 25).

44.     On May 6, 2013, the PT Express and Security company courier service' Agent Lawrence Woodman emailed Michael Klicpera and all of sudden realized the security concerns of the consignment and then changed their policy and required a "bullion van" that would cost an additional $16,000 USD.  Plaintiff offered to pick up the consignment trunk itself at the airport but the PT Express and Security company courier service refused stating that they only make "home deliveries" and a bullion van is required (see Exhibit 26).

45.     On May 8, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $16,000 USD to Ms. Marry Juliet Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Norzamini Binti Roslan (see Exhibit 27).  Expressing concerns for making loans in this project, and never expecting to finance this project, Ms. Marry Juliet Smith told Michael Klicpera that she had rights to real property in Las Cruses, New Mexico and had real estate rights to property in a town called Maumee in Ohio.  Ms. Marry Juliet Smith stated that the Ohio properties were under the control by her father's property lawyer named Mr. McCandles.  Ms. Marry Juliet Smith told Michael Klicpera that once the trunk was transferred to the Plaintiff, then Ms. Marry Juliet Smith could return to the United States and sell the properties.  Ms. Marry Juliet Smith allegedly obtained the money from this payment receiver and tendered the $16000 USD cash to the PT Express and Security company courier service in Malaysia.  The Plaintiff recorded the loan payment and interest payment in an Excel file.

46.    On May 10, 2013, the PT Express and Security company courier service' Agent Lawrence Woodman sent Michael Klicpera an email stating that they need a tax clearance for the United States of America in the amount of $21,310 USD (See Exhibit 28).

47.    On May 14, 2013, Marry Juliet Smith requested, in a Microsoft Skype conversation, a personal loan of $3,000 USD to pay the Dr. Mohammad Rush and confirming that she would pay the entire payment with interest on all loans from the cash in the trunk,

48.    Plaintiff tendered a payment of $3,000 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Norzamini Binti Roslan (see Exhibit 29). The Plaintiff recorded the loan payment and interest payment in an Excel file.

49.    After numerous conversations with Ms. Marry Juliet Smith about the delay and costs of this project, Plaintiff was persuaded to continue to secure loans and on May 16, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $21,300 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Mohamed Fadly Bin Mohd Jelan  (see Exhibit 30).  Ms. Marry Smith allegedly obtained the money from these payment receivers and tendered the $21,300 USD cash to the PT Express and Security company courier service in Malaysia. I recorded the load payment and interest payment in an Excel file.

50.    On May 16, 2013, the PT Express and Security company courier service's Agent Lawrence Woodman acknowledged, through an email, the receipt of the payments and assure deliver and delivery will be made as soon as possible (see Exhibit 31).

51.    On May 20, 2013, the PT Express and Security company courier service' Agent Lawrence Woodman sent Michael Klicpera an email apologizing for failure to deliver the consignment trunk and promised to deliver on this day (see Exhibit 32).

Complaint- Breach of Contract, Money Had and Received, and Fraud

52.     On May 20, 2013, Michael Klicpera waited at the drop off location but the consignment trunk was not delivered.   The PT Express and Security Company courier service and agent Lawrence Woodson failed to perform on their written promise and did not deliver the consignment trunk.

53.     On May 23, 2013, the PT Express and Security company courier service' Agent Lawrence Woodman sent Michael Klicpera an email apologizing for failure to deliver the consignment trunk and promised to deliver on this day (see Exhibit 33).

54.     On May 23, 2013, Michael Klicpera waited at the drop off location but the consignment trunk was not delivered.  The PT Express and Security Company courier service and agent Lawrence Woodson again failed to perform on their written promise and did not deliver the consignment trunk.

55.     Then later on May 23, 2013, the PT Express and Security company' Agent Lawrence Woodman courier service sent an email to Marry Smith, copying Michael Klicpera, stating that an at-testate form authorizing the receiver was required (see Exhibit 34).

56.     Then on May 24, 2013, the PT Express and Security company courier service agent Lawrence Woodman secured a Transfer of Ownership simple one page contract and required a payment of $28,455 USD (see Exhibit 35).

57.     On May 24, 2013, Marry Smith requested that Plaintiff help her with a personal loan of $450.00 for personal expenses through Josephine A. Adika of Albertville, Minnesota, using a MoneyGram account that cost $27 USD to send the $450 USD amount totaling $477.00 USD . Marry Smith agreed to pay the loan back on full with interest. (see Exhibit 36).

58.     On May 24, 2013, after my complaints about the incompetent service, PT Express and Security Company courier service and Agent Lawrence Woodman stated that this would be that last payment before delivery and no more payments will be necessary (see Exhibit 37).

59.    On May 27, 2013, PT Express and Security company courier service and Agent Lawrence Woodman stated that Ms. Marry Smith still had not signed the Transfer of Ownership document (see Exhibit 38).

60.    On May 27, 2013, after not receiving any response from my previous letter, Michael Klicpera sent another letter to the Maybank in Malaysia where the money wires were sent inquiring about several of the transactions that went thought their bank, and provided the bank names and account numbers of Norbaizura Binti Bahari and Norzamini Binti Roslan.  Again, Plaintiff never received a response to this letter nor was the letter returned to the listed address by the post office for failure to deliver the letter (see Exhibit 39).

61.    Frustrated with the incompetent service provided by the PT Express and Security company courier service and Agent Lawrence Woodman, yet financially committed, and once again after numerous conversations with Ms. Marry Smith about the delay and costs of this project, Plaintiff was persuaded to continue to secure loans and on May 28, 2013, after confirming with Ms. Marry Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $28,455.00 USD directly to PT Express and Security Company in their Sovereign Bank located in Bronx, New York (see Exhibit 40).  The Plaintiff recorded the loan payment and interest payment in an Excel file.

62.    On May 29, 2013, the PT Express and Security company courier service' Agent Lawrence Woodman sent Michael Klicpera an email stating that they have received the proper documentation and are processing the payment and that the consignment trunk would be delivered "to you without no further delay." (see Exhibit 41).

63.    On May 30, 2013, once again, the PT Express and Security company courier service Agent Lawrence Woodman promised that the consignment trunk would be delivered between 10:00 a.m. to 11:00 a.m. on June 3, 2013.  (see Exhibit 42).

64.     On June 3, 2013 the Michael Klicpera waited at the drop off location and the agreed time period but no consignment trunk was delivered.  The PT Express and Security Company courier service and agent Lawrence Woodson failed to perform on their written promise and did not deliver the consignment trunk.

65.     Then on June 5, 2013, the PT Express and Security company courier service sent Michael Klicpera an email and stated that demurrage fees have accumulated to the amount of $46,300 USD but was offering to reduce this to $32,000 USD as they took partial responsibility for the delay.  It should be noted that PT Express and Security Company's Agent Lawrence Woodman stated on May 30, 2013 "that the consignment trunk would be delivered between 10:00 a.m. to 11:00 a.m. on June 3, 2013".  But the trunk was never delivered and now they that wanted a demurrage fee for their own delay.  The PT Express and Security company accepted only partial responsibility for the delay but still want to shift the payment to the Plaintiff and demanded a payment of $32,000 USD.  Hoping that this would be the final payment, Michael Klicpera contacted Ms. Marry Smith.

66.     After numerous conversations with Ms. Marry Juliet Smith about the delay, the financial commitment, costs of this project and that Plaintiff demanded that this was the final payment, Plaintiff was persuaded to continue to secure loans and on June 5, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $14,000 USD to Ms. Marry Juliet Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Norzamini Binti Roslan and Plaintiff tendered a payment of $20,000 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Mohamed Fadly Bin Mohd Jelani (see Exhibit 43).  Ms. Marry Smith allegedly obtained the money from these payment receivers, kept $2000 USD for her expenses and tendered the remaining $32,000 USD cash to the PT

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

Express and Security company courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

67.     On June 11, 2013, the PT Express and Security company courier service' Agent Lawrence Woodman sent Michael Klicpera an email stating that they have received the $32,000 USD payment and are processing the payment and that the consignment trunk would be delivered "to your door step without no further delay."

68.     However, once again the PT Express and Security Company courier service  and agent Lawrence Woodson failed to perform on their written promise and did not deliver the consignment trunk.

69.     On June 13, 2013, the PT Express and Security company courier service' Agent Lawrence Woodman sent an email stating that a Bill of Lading was missing and need to be generated.  The PT Express and Security company courier service stated that this would cost $37,000 USD (see Exhibit 44).

70.     On June 14, 2013, on behalf of Plaintiff, Michael Klicpera complained vigorously about the incompetent service and the expensive bills and demanded that the trunk be delivered and payment made upon delivery.   Michael Klicpera complained that all the previous issues should have been discovered at once instead of constantly coming up with a new issues (see Exhibit 45).  Michael Klicpera had been becoming more suspicious and now became significantly concerned that this was a scam operation.

71.     On June 15, 2013,  becoming suspicious that this was a case of fraud, Michael Klicpera sent an email to PT Express and Security Company courier service' Agent Lawrence Woodman an email requesting a picture of the consignment trunk.

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

72.     On June 16, 2013,  becoming suspicious that this was a case of fraud, Michael Klicpera sent

an email to PT Express and Security Company courier service' Agent Lawrence Woodman an email

requesting a copy of the insurance policy that I purchased.

73.     On June 17, 2013, PT Express and Security Company Courier Service's Agent Lawrence

Woodman sent Michael Klicpera an email denying to provide a copy of a picture of the consignment

trunk (see Exhibit 46).

74.     On June 17, 2013, PT Express and Security Company Courier service's Agent Lawrence

Woodman send Michael Klicpera an email denying to provide a copy of the insurance policy that

Plaintiff  purchased (see Exhibit 47).

75.     On June 17, 2013, Michael Klicpera sent two letters to the Maybank branches in Malaysia

were money wires were sent (one to GF and 1F, Glk H,  Pusat Perdagangan Puchong Prima, JLN

Prima, 5/5 TMN Puchong Prima 47000 Puchong Selangor and an second to 30 Jalan Teknologi

Seksyen 2 PJU 3 Kota, Damansara 478710 Jaya Selangor)  inquiring about several of the

transactions that went thought their bank and provided the bank account and names of Norbaizura

Binti Bahari, Norzamini Binti Roslan, Zamian Binti Unus and Mohamed Fadly Bin Mohd Jelani,

and inquired whether these were fraudulent activities.  Again, Plaintiff never received a response to

this letter  nor was the letter returned to the listed address by the post office for failure to deliver the

letter (see Exhibit 48).

76.     After numerous conversations with Ms. Marry Juliet Smith about the delay, financial

commitment, costs of this project and demands that this was the final payment, Plaintiff was

persuaded to continue to secure loans and on June 18, 2013, after confirming with Ms. Marry Juliet

Smith that in securing this loan that she would pay the entire payment with interest on all loans from

the cash in the trunk, Plaintiff tendered a payment of $22,000 USD to Ms. Marry Juliet Smith

through a Wells Fargo wire service to Maybank and then to a payment receiver Zamian Binti Unus

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

and Plaintiff tendered a payment of $15,000 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Mohamad Fadly Bin Mohd Jelani (see Exhibit 49). Ms. Marry Smith allegedly obtained the money from these payment receivers and tendered the $37,000 USD cash to the PT Express and Security company courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

77.     On June  24, 2013, the PT Express and Security company courier service sent Michael Klicpera an email stating "we are now at the storage getting ready to pick up your trunk box as we have the bullion van ready and as soon as we pick it up, we will let you know and get you ready to be at the drop off location"  (See Exhibit 50).

78.     On June 24, 2013 the Plaintiff waited at the agreed time period and drop off location but no consignment trunk was delivered as promised.  However, the PT Express and Security Company courier service and agent Lawrence Woodson failed to perform on their written promise and did not deliver the consignment trunk.

79.      On June 24, the PT Express and Security company courier service sent Michael Klicpera an email to Michael Klicpera and stated that a "road tax will be charged on the consignment and the said amount of $62,000.00 USD  has been imposed on your consignment alongside with the var just because of the bullion van involved with regarded to the content of your consignment and it has been reveal to us, this is a necessity and its very compulsory.  PT Express and Security Company courier service provided an option for Michael Klicpera to come in person to their Texas Office and pick up the trunk whereby the total sum to pay would be $5000.00 USD to their office in Paris and present $30,000.00 USD in cash to the Texas office (see Exhibit 51).  Later PT Express and Security Company required the $30,000.00 USD paid in advance.

80.     Michael  Klicpera had numerous conversations with Ms. Marry Juliet Smith about the delay, the financial commitment, costs of this project and demands that this was the final payment,  and

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

that Michael Klicpera suspected that PT Express and Security company we exaggerating fees or that this was a scam operation.  Ms. Marry Juliet Smith stated that the courier service was very strict and would not budge.  Ms. Marry Juliet Smith finally persuaded to continue to secure loans and on July 2, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $15,000 USD to Ms. Marry Juliet Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Norbaizura Binti and Plaintiff tendered a payment of $15,000 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Mohamad Fadly Bin Mohd Jelani (see Exhibit 52).  Ms. Marry Smith allegedly obtained the money from these payment receivers and tendered the $30,000 USD cash to the PT Express and Security company courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

81.     On July 5, 2013 the PT Express and Security company courier service stated  that they were "unable to clear the road tax because of dumurrage (sic) charges have been imposed on your consignment"  and then stated "we want to do all our best to get your trunk box to you as we have promised but because we haven't clear (sic) the demurrage charges" and the Plaintiff  was required to pay charges or $46,300 USD (see Exhibit 53).

82.     After numerous conversations with Ms. Marry Juliet Smith about the delay, the financial commitment , costs of this project demands that this was the final payment and additional discussion about Ms. Marry Juliet Smith's Ohio properties were under the control by her father's property lawyer named Mr. McCandles, Ms. Marry Juliet Smith told Michael Klicpera that once the trunk was transferred to the Plaintiff, then Ms. Marry Juliet Smith could return to the United States and sell the properties, Plaintiff was persuaded to continue to secure loans and on July 10, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire

payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $16,500 USD to Ms. Marry Juliet Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Zamian Binti Unus and I tendered a payment of $16,500 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Mohamad Fadly Bin Mohd Jelani and on July 16, 2013, Plaintiff tendered $15,666.67 USD to Norsamini Binti Roslan (see Exhibit 54). Ms. Marry Smith allegedly obtained the money from these payment receivers and tendered the $46,300 USD cash to the PT Express and Security company courier service in Malaysia and kept the remaining for personal use. The Plaintiff recorded the loan payment and interest payment in an Excel file.

83.     Frustrated herself, Marry Smith and her lawyer allegedly met with PT Express and Security company owner to complain about the poor, incompetent and expensive service that the PT Express and Security company was provided by Lawrence Woodman.   Majid Anderson, the alleged president of PT Express and Security company in Malaysia, convey to Marry Smith that he agreed with her complaints and was going to replace Lawrence Woodman with an new agent, Adi Putera Hassan and that the trunk will be delivered as soon as possible.

84.     On July 18, 2013, PT Express and Security company agent Adi Putera Hassan called Michael Klicpera and sent an email stating the trunk would be delivered by 12 p.m. on this very same day (See Exhibit 55).

85.     On July 18, 2013 the Plaintiff waited at the agreed time period and drop off location but no consignment trunk was delivered as promised.  However, the PT Express and Security Company courier service and agent Adi Putera Hussan failed to perform on their written promise and did not deliver the consignment trunk.

86.     On July 18, 2013,  PT Express and Security company agent Adi Putera Hassan sent Michael Klicpera an email stating the a new "bullion" van would be necessary to deliver the trunk and that

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

$58,000 USD was necessary to secure the vehicle.  An additional $50,000 USD will be required for demurrage fees and that this $50,000 USD will be paid after delivery of the consignment trunk (See Exhibit 56).   Plaintiff complained that PTI LLC. paid for a "bullion van" already and that we should not be charged again and these continued demurrage fee were outrageous and spurious.

87.     After numerous conversations with Ms. Marry Juliet Smith about the delay in delivery, costs of this project and demands that this was the final payment, Plaintiff was persuaded to continue to secure loans and on July 23, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $38,000 USD directly to Defendant Tao A. Olagoke Wells Fargo Account (see Exhibit 57).

88.     On July 24, 2013, PT Express and Security company agent Adi Putera Hassan sent Michael Klicpera an email state the payment was confirmed and delivery of the trunk will be "exactly 11 am tomorrow , the 25th of August (sic) [July] 2013." (see Exhibit 58).

89.     Then on July 25, 2013, PT Express and Security company agent Adi Putera Hassan called Michael Klicpera and told Michael Klicpera that the original agreement to tender the $50,000 USD after delivery of the consignment trunk, but now stated that the PT Express and Seccurity Company courier services defendant required the $50,000 USD to be tendered before delivery.  Immediately thereafter on July 25, 2013, Michael Klicpera sent an email to PT Express and Security company agent Adi Putera Hassan complaining about PT Extress and Security Company and Adi Putera Hassan broken promise and requirement to pay the $50,000 before delivery of the trunk (see Exhibit 59).

90.     On July 27, 2013, PT Express and Security company agent Adi Putera Hassan sent Michael Klicpera an email stating that the PT Express and Security company agreed to deliver the

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

consignment trunk if Plaintiff paid $40,000 USD and then the remaining $10,000 USD would be paid upon delivery (See Exhibit 60).

91.      After numerous conversations with Ms. Marry Juliet Smith about the delay, the financial commitment, costs of this project and demands that this was the final payment, Plaintiff was persuaded to continue to secure loans and on July 29, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $13,000 USD to Ms. Marry Juliet Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Zamian Binti Unus, tendered a payment of $13,000 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Norzamini Binti Roslan, and tendered a payment of $14,000 USD to Ms. Marry Juliet through a Wells Fargo wire service to Maybank and then to a payment to receiver Mohamad Fadly Bin Mohd Jelani (See Exhibit 61).  Ms. Marry Smith allegedly obtained the money from these payment receivers and tendered the $40,000 USD cash to the PT Express and Security company courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

92.     On July 27, 2013, PT Express and Security company agent Adi Putera Hassan sent Michael Klicpera an email stating that they were having another issue in delivering the trunk.

93.     On August 5, 2013, PT Express and Security company agent Adi Putera Hassan called Michael Klicpera and stated that "clearance delivery document" was missing and need to be generated.  PT Express and Security company agent Adi Putera Hassan stated that the cost would be $45,000 USD. l complained vigorously about the incompetent service, continual breaching agreements to deliver the consignment trunk.

94.     On August 7, 2013, PT Express and Security company agent Adi Putera Hassan told Michael Klicpera that there would not be any additional charges and that once the $45,000 USD was paid, the trunk will be delivered the very next week (See Exhibit 62).

95.     After numerous conversations with Ms. Marry Juliet Smith about the delay, the financial commitment, costs of this project and demands that this was the final payment, Plaintiff was persuaded to continue to secure loans and on August 8, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $15,000 USD to Ms. Marry Juliet Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Zamian Binti Unus, tendered a payment of $15,000 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Norzamini Binti Roslan, and tendered a payment of $15,000 USD to Ms. Marry Juliet through a Wells Fargo wire service to Maybank and then to a payment to receiver Mohamad Fadly Bin Mohd Jelani (see Exhibit 63).  Ms. Marry Smith allegedly obtained the money from these payment receivers and tendered the $45,000 USD cash to the PT Express and Security company courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

96.     Around August 8, 2013, after not receiving any response from my previous letters, Michael Klicpera called the Maybank fraud department in Malaysia and inquiring about several of the transactions that went thought their bank, and provided the bank account names of Norbaizura Binti Bahari, Norzamini Binti Roslan, Zamian Binti Unus and Mohamed Fadly Bin Mohd Jelani  and I was told that they could do nothing to help the Plaintiff.

97.     On August 9, 2013, PT Express and Security company agent Adi Putera Hassan confirmed the receipt of the money tendered and promise delivery of the consignment trunk by 11:00 a.m. San Francisco time Monday August 13, 2013 (see Exhibit 64).

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

98.     On August 13, 2013 the consignment trunk never arrived at the delivery location as promised by PT Express and Security company agent  and Adi Putera Hassan.  However, the PT Express and Security Company courier service and agent Adi Putera Hussan failed to perform on their written promise and did not deliver the consignment trunk.

99.     Then around August 15, 2013 PT Express and Security company agent Adi Putera Hassan stated that $47,500 was need for additional storage fees.

100.    Completely exhausted of resources and giving up on ever receiving the consignment trunk, and after requesting that Ms. Marry Juliet Smith utilize her assets from the Maumee, Ohio properties and/or request help from her father's property lawyer McCandles, Ms. Marry Juliet Smith send Michael Klicpera an email stating that nothing can happen until she returns to the US and stated that Property Lawyer McCandles cannot help but the trunk would be delivered the following Wednesday if payment was made by the Plaintiff.

101.    After numerous conversations with Ms. Marry Juliet Smith about the delay, the financial commitment, costs of this project and demands that this was the final payment, Plaintiff was persuaded to continue to secure loans and on August 22, 2013, after confirming with Ms. Marry Juliet Smith that in securing this loan that she would pay the entire payment with interest on all loans from the cash in the trunk, Plaintiff tendered a payment of $16,499 USD to Ms. Marry Juliet Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Zamian Binti Unus, tendered a payment of $15,833 USD to Ms. Marry Smith through a Wells Fargo wire service to Maybank and then to a payment receiver Noor Fadilah Binti MD Sure, and tendered a payment of $15,833 USD to Ms. Marry Juliet through a Wells Fargo wire service to Maybank and then to a payment to receiver Mohamad Fadly Bin Mohd Jelani (see Exhibit 65).  Ms. Marry Smith allegedly obtained the money from these payment receivers and tendered the $47,500 USD cash to the PT

Express and Security company courier service in Malaysia. The Plaintiff recorded the loan payment and interest payment in an Excel file.

102.    On August 23, 2013, PT Express and Security company agent Adi Putera Hassan informed Michael Klicpera that payments were tendered and promised to deliver the consignment trunk on August 27, 2013 (see Exhibit 66).

103.    On August 27, 2013, the consignment trunk never arrived at the delivery location as promised by PT Express and Security company agent Adi Putera Hassan. However, the PT Express and Security Company courier service and agent Adi Putera Hussan failed to perform on their written promise and did not deliver the consignment trunk.

104.    On August 27, 2013, Michael Klicpera received an email from an unknown individual name Marc Taylor stating that Marry Smith is a scam (see Exhibit 67). Michael Klicpera never provided this individual his email address or any information about the involvement with the consignment trunk. Michael Klicpera immediately contacted Adi Putera Hassan and Marry Juliet Smith. Marry Juliet Smith stated that she suspecting that this email was generated from the previous fired courier agent.

105.    On September 4, 2013, I received another email from an unknown individual name Marc Taylor stating that Marry Smith is a scam (see Exhibit 68). Michael Klicpera never provided this individual his email address or any information about the involvement with the consignment trunk. Michael Klicpera immediately contacted Adi Putera Hassan and Marry Juliet Smith. Marry Juliet Smith again stated that she suspecting that this email was generated from the previous fired courier agent.

106.    On September 10, 2013, PT Express and Security company agent Adi Putera Hassan confirmed the drop location and promised to make delivery of the consignment trunk again (see Exhibit 69).

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

107.    During the period of September 10 through the 12, 2013, the consignment trunk was not delivered.  The PT Express and Security Company courier service, and agent Adi Putera Hussan, failed to perform on their written promise and did not deliver the consignment trunk.

108.    On September 13, 2013, PT Express and Security company agent Adi Putera Hass sent Michael Klicpera an email stating the a U.S. tax of $48,500 USD must be paid before the consignment trunk can be delivered (see Exhibit 70).  Michael Klicpera informed Adi Putera Hassan that on May 10, 2013, the Plaintiff already paid $21,300 USD for a U.S Tax clearance on May 16, 2013 (see Exhibit 30).   At this point, Plaintiff refused to make any additional payments based on numerous breaches of written promises after consideration was tendered to the Defendants, the suspicion of fraud, and the lack of financial resources.

109.    From September 14, 2013 through November, 18, 2013, the Plaintiff visited the SF Customs office, courier services in the San Francisco Bay Area, and other sources to determine if this was a scam operation.

110.    On November 11, 2013, Michael Klicpera contacted a representative, Catalina Riveria, from GT Express and Security Company (GTEX) in Miami and sent a copy of the Shipment Air Waybill (see Exhibit 71).  After reviewing the document, the GTEX representative communicated with Michael  Klicpera stating that the document was not a legitimate GTEX certificate.

111.    Ms. Marry Juliet Smith still communicates with Michael Klicpera to date of this complaint asking the Plaintiff to help her rescue the consignment trunk.

112.    On June 4, 2014, PT Express and Security company agent Adi Putera Hassan sent Michael Klicpera an email stating that the consignment trunk would be removed from storage if payment was not made (see Exhibit 72).

113.    Plaintiff convinced Ms. Marry Juliet Smith to allow Plaintiff to contact alleged Property Lawyer Mr. McCandles and attempt to resolve the delivery of the consignment trunk and on July 1,

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

2014, the alleged Property Lawyer Mr. McCandles contacted Michael Klicpera by email and confirmed that he sent $10,000 USD to Ms. Mary Juliet Smith but cannot help her any more without her presence in the United States (see Exhibit 73).

114.    On August 12, 2014, PT Express and Security company agent Adi Putera Hassan sent Michael Klicpera an email stating that the consignment trunk would be sent back to Malaysia if the payment cannot be made (see Exhibit 74).

115.    On December 27, 2014, the alleged secure storage facility in Malaysia that has allegedly has the possession of the trunk, needed $78,000 USD in storage fees to release the consignment trunk but is willing to take 60% up front ($48,600 USD) and the remainder paid upon delivery (see Exhibit 75).

116.    Michael Klicpera requested the Ms. Mary Juliet Smith provide her residential address in Las Cruses, New Mexico or have here property lawyer provide information regarding the properties in Ohio but this request has been refused.

117.    On January 22,  2015 Ms.  Marry Juliet Smith sent me an email stating that she has provided all information and trust to deliver the consignment trunk and cannot "afford eat or get medicine for my health, I'm sick of all (see Exhibit 76).

118.    As of the day of this Complain, the consignment trunk or package containing the monetary contents has not been delivered as both orally and written promised by PT Express and Security Company, and Lawrence Woodman and Adi Hassan Putera, agents of PT Express and Security Company.

119.    On or about September 2013 Defendants PT Express and Security Company and Lawrence Woodman, and each of them, became indebted to Plaintiff in the sum of $470,770 USD plus allowable interest for breaching their written promises to deliver the consignment trunk.

120.    On or about May 2013, Defendant GT Express and Security Company became indebted to the Plaintiff in the sum of $9720.00 USD plus allowable interest.

121.    On or about July 23, 2013, defendant Tao A. Olagoke became indebted to Plaintiff in the sum of $38,000 USD for money sent by Plaintiff to Defendant for rental of a "bullion van" that was never provided or utilized.

**SECOND CAUSE OF ACTION FOR MONEY HAD AND RECEIVED**

122.    Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs one through one hundred and twenty one above.

123.    On or about May 2013, Defendant GT Express and Security Company became indebted to the Plaintiff in the sum of $9720.00 USD plus allowable interest.

124.    On or about September 2013, Defendants PT Express and Security Company and Lawrence Woodman, and each of them, became indebted to Plaintiff in the sum of $470,770 for money sent by Plaintiff to defendants for delivery of a consignment trunk, and each of them, at their instance and request.

125.    On or about July 23, 2013, defendant Tao A. Olagoke became indebted to Plaintiff in the sum of $38,000 USD for money sent by Plaintiff to Defendant for rental of a "bullion van" that was never provided or utilized.

126.    After numerous written promises to deliver the consignment trunk, the Defendants, and each of them, receive the Plaintiff's money but failed to meet their obligation to deliver the consignment trunk to the defined drop off location.  No part of the sum investment has been repaid, although repayment has been demanded, leaving the balance due, owing, and unpaid to Plaintiff in the amount of $500,337 USD plus interest at the legal rate from and after August 23, 2013.

**THIRD CAUSE OF ACTION FOR FRAUD**

127.     Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs one through one hundred and twenty six above.

128.     On or about June 19, 2014, defendants and each of them represented to Plaintiff that they would use their best efforts to deliver the consignment trunk. These representations were false and defendants knew the falsity of these statements at the time they were made.

129.     Plaintiff is informed and believes and thereon alleges that defendants, and each of them, had no intention to deliver the consignment trunk, and created a scheme to defraud the Plaintiff.

130.     Plaintiff relied on the representations of defendant and would not have made the loan otherwise.

131.     Plaintiff is informed and believes and thereon alleges that defendants, and each of them, never delivered the consignment trunk thus depriving Plaintiff of its funds and to defraud Plaintiff, all with malice toward Plaintiff.  Plaintiff has been injured by loss of use of the funds, loss of reputation, and an inability to compete in various markets without the use of said funds.

132.     Plaintiff seeks compensatory damages in the amount of $75,000 USD for said acts from PT Express and Security Company.

133.     Plaintiff seeks compensatory damages in the amount of $75,000 USD for said acts from GT Express and Security Company.

134.     Plaintiff seeks compensatory damages in the amount of $75,000 USD for said acts from Lawrence Woodman.

135.     Plaintiff seeks compensatory damages in the amount of $75,000 USD for said acts from Tao A. Olagoke.

**Complaint- Breach of Contract, Money Had and Received, and Fraud**

136.    These acts were malicious, fraudulent and oppressive, justifying an award of punitive damages so that defendants and each of them will not engage in such conduct in the future and make an example of them.

WHEREFORE PLAINTIFF PRAYS for judgment against defendants, and each of them as follows:

1. For the sum of $518,490 USD for breach of contract, money had and received, and for the value of the Plaintiff's performance.

2. For interest thereon at the legal rate from and after August 23, 2013.

3. For $75,000 USD general/special damages for defendant PT Express and Security's fraud.

4. For $75,000 USD general/special damages for defendant GT Express and Security's fraud.

5. For $75,000 USD general/special damages for defendant Lawrence Woodman's fraud.

6. For $75,000 USD general/special damages for defendant Tao A. Olagoke's fraud.

7. For punitive damages according to proof.

8. For reasonable attorneys' fees and costs incurred herein.

9. For such other and further relief as the court may deem just and proper.


Michael E. Klicpera

By___/s/ Michael E. Klicpera
        Michael E. Klicpera
        Attorney for Plaintiff
        Patent Technology, LLC

February 6, 2015

**Complaint- Breach of Contract, Money Had and Received, and Fraud**