UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATENT TECHNOLOGY, LLC,<br>   Plaintiff,<br>  v.<br>LAWRENCE WOODMAN, et al.,<br>   Defendants. | Case No. 15-cv-00578-DMR<br><br>**ORDER ON ASSORTED MOTIONS**<br>Re: Dkt. Nos. 17, 18, 20, 24, 25, 34 |

Plaintiff Patent Technology LLC[1] has filed an assortment of motions. [Docket Nos. 17, 18, 20, 24, 25.] Although the motions present a confusing array of requests, what emerges is that Plaintiff seeks early discovery of third-party information in order to discover the true identities and contact information for the named Defendants as well as potential Defendants so that Plaintiff may serve them with this lawsuit. Plaintiff also moves to seal certain information associated with its request for early discovery, and for an extension of the deadline by which to serve certain Defendants with the pleadings. The court finds that these matters are appropriate for resolution without oral argument pursuant to Civil Local Rule 7-1(b).

**I. BACKGROUND**

**A. Factual Allegations**

This lawsuit stems from Plaintiff's attempts to ship a trunk believed to contain $1.2 million in cash from Malaysia to the United States.

---

[1] Michael Klicpera is the principal officer of Plaintiff. Am. Compl. [Docket No. 7] at ¶ 4. Klicpera is also an attorney and is representing Plaintiff in this lawsuit.

### 1. Initial Contact with Marry Juliet Smith

On April 5, 2013, Plaintiff and a person named Marry Juliet Smith[2] communicated via Skype, a video chat platform. Plaintiff alleges that Smith was born in Las Cruces, New Mexico, and currently resides in Malaysia. *Id.* at ¶ 10. During this initial communication, Plaintiff agreed to be paid $20,000 in exchange for receiving and becoming the claimant of a trunk containing $1.2 million that allegedly belonged to Smith and would be shipped from Malaysia to the United States. Am. Compl. at ¶ 17.

### 2. Payments to Various Individuals and Entities

From April until August 2013, numerous individuals and entities ostensibly associated with the shipment of the trunk requested money from Plaintiff for the purposes of enabling the shipment, and Plaintiff sent money to various bank accounts in various amounts. Plaintiff became "significantly concerned that this was a scam operation," but despite this concern continued to send money toward the payment of fees and taxes associated with the shipment of the trunk. *See, e.g.*, *id.* at ¶¶ 70, 76, 80, 82. The transactions described below represent only a sample of the payments that were requested and that Plaintiff made.

- **Initial Request for Payment from Smith.** Around April 5, 2013, Smith requested that Plaintiff send her $2,500 for an "anti-Terrorist Certificate" and $8,600 for a "Malaysian Tax needed for transporting the trunk to the United States." *Id.* at ¶¶ 17.

- **Initial Request for Payment from GT.** On April 16, 2013, Plaintiff was contacted by Defendant GT Express and Security Company ("GT"), the company shipping the trunk. GT informed Plaintiff that the shipment was delayed because GT required the trunk to be insured at the cost of $9,720. *Id.* at ¶ 20.

- **Initial Request for Payment from PT.** On April 18, 2013, Plaintiff was contacted by someone from Defendant PT Express and Security ("PT"),[3] apparently a courier service based in Kuala Lumpur and London. *Id.* at ¶¶ 12, 25. PT informed Plaintiff that it required $23,000 to deliver the trunk.

---

[2] Smith is not named as a Defendant, but Plaintiff notes that she is a "potential Defendant." *Id.* at ¶ 11. The early discovery requested by Plaintiff is in part directed toward uncovering the true identity of and contact information for Smith.

[3] Plaintiff alleges that GT is "a[n] agent or service provide[r] associated with PT." Am. Compl. at ¶ 6. Both are named as Defendants.

2

- **Payment to Smith and/or PT's Maybank Account.** On April 18, 2013, Plaintiff sent $11,500 to Smith and/or PT Express from its Wells Fargo account to a Maybank[4] account. *Id.* at ¶ 26.

- **Payment to Smith's Maybank Account.** On April 22, 2013, Plaintiff sent another payment of $11,500 to Smith from its Wells Fargo account to a Maybank account. *Id.* at ¶ 28.

- **Payment to PT's Bank of America Account.** On April 22, 2013, PT sent an email to Plaintiff requesting a $11,500 "demurrage fee" and instructing Plaintiff to deposit the money directly into PT's Bank of America account; Plaintiff then paid $11,500 to the Bank of America account. *Id.* at ¶ 29; Compl. [Docket No. 1] at Ex. 12 (email from PT to Plaintiff instructing Plaintiff to send money to Bank of America account #483042739956).

- **Payment to AIG's Wells Fargo Account.** On May 2, 2013, Defendant Lawrence Woodman, acting as PT's agent, sent Plaintiff an email purporting to charge $23,100 for a "dumurrage [sic] fee" that had to be paid to an entity called AIG Imports and Exports ("AIG"), which is not named as a Defendant in this action.[5] The following day, Plaintiff sent payment of $23,000 from Plaintiff's Wells Fargo account to AIG's Wells Fargo account. *Id.* at ¶¶ 41-42; Compl. at Ex. 24 (Wells Fargo transaction receipt a withdrawal from an unspecified account to an account ending -4938).

- **Payment to PT's Sovereign/Santander Bank Account.** On May 28, 2013, Plaintiff sent $28,455 USD to a Sovereign Bank[6] account that Plaintiff believed to belong to PT. *Id.* at ¶ 61; Compl. at Ex. 40 (transfer slip showing transfer of money from Plaintiff's Wells Fargo account to PT's Sovereign Bank account).

- **Payment to Tao A. Olagoke's Wells Fargo Account.** On July 18, 2013, PT told Plaintiff that a "bullion" van would be necessary to deliver the trunk and that additional money was required to secure the bullion van. On July 23, 2013, Plaintiff tendered payment of $38,000 to the bank account of Defendant Tao A. Olagoke, who is alleged to be an agent for PT. *Id.* at ¶¶ 13, 87; Compl. at Ex. 57 (Wells Fargo deposit slips showing withdrawal from Plaintiff's account and deposit into Wells Fargo account for Tao Olagoke).

Eventually, Plaintiff refused to make any additional payments associated with the delivery of the trunk. *Id.* at ¶ 108. The trunk was never delivered to Plaintiff.

Plaintiff brings three causes of action against Defendants GT, PT, Woodman, and Olagoke:

---

[4] "Maybank" is not defined in the Amended Complaint. Based on exhibits attached to the original Complaint, it appears that Maybank is the Malaysian bank to which Plaintiff wired money from Plaintiff's Wells Fargo account.

[5] Plaintiff alleges that AIG Imports and Exports is a "potential defendant" in this case. Am. Compl. at ¶ 5.

[6] Plaintiff alleges that Sovereign Bank is now known as Santander Bank. Docket No. 18 at 4.

3

(1) breach of contract; (2) money had and received; and (3) fraud. *Id.* at ¶¶ 119-135. The total amount paid by Plaintiff for the delivery of the trunk is not clearly explained in the Amended Complaint. However, Plaintiff's breach of contract claim alleges that Defendants PT and Woodman became "indebted to Plaintiff in the sum of $470,000 USD plus allowable interest for breaching their written promises to deliver the consignment trunk," that GT owes $9,720 to Plaintiff, and Olagoke owes $38,000 to Plaintiff. *Id.* at ¶¶ 119-121.

### 3. Involvement of "Mr. McCandles"

The Amended Complaint also alleges the involvement of a person named "Mr. McCandles," whom Plaintiff believes to be the property lawyer for Smith's deceased father. *Id.* at ¶ 45.

Around May 8, 2013, Smith informed Plaintiff that she had rights to real property in Las Cruces, New Mexico and in Maumee, Ohio, but that the Ohio properties were under the control of McCandles. *Id.* Plaintiff asked Smith to request help from McCandles for the payment of some of the assorted fees and taxes that Plaintiff had been asked to provide to PT, but Smith stated that McCandles could not help. *Id.* at ¶ 100. Some time later, Plaintiff persuaded Smith to allow Plaintiff to contact McCandles to resolve the delivery of the trunk. On July 1, 2014, McCandles "contacted Michael Klicpera by email and confirmed that he sent $10,000 USD to Ms. Mary Juliet Smith but cannot help her any more without her presence in the United States." *Id.* at ¶ 113. The email does not indicate the identity of the sender: it is addressed from "pro-propertieschamber@outlook.com" to Klicpera, and signed by "PROPROPERTY LAWCHAMBER." *See* Compl. at Ex. 73.

### B. Motions

Plaintiff has filed six motions that are pending before the court. Docket Nos. 17, 24, and 25 regard Plaintiff's request that certain portions of its other two motions be filed under seal and Docket No. 34 is Plaintiff's motion to extend the period for service of process; these motions will be addressed at the end of this order. The court first addresses Docket Nos. 18 and 20, in which Plaintiff moves the court for an order requiring Santander Bank, Wells Fargo, Bank of America, Microsoft, and the State of New Mexico to provide Plaintiff with information to assist it in

4

1 identifying and locating Defendants and potential Defendants for service.

## II.    MOTIONS FOR EARLY THIRD-PARTY DISCOVERY

### A.    Legal Standards

Generally, a party may not initiate discovery before the parties have met and conferred pursuant to Federal Rule of Civil Procedure 26(f).  However, a court may authorize earlier discovery "for the convenience of parties and witnesses and in the interests of justice."  Fed. R. Civ. P. 26(d).  Courts have permitted "limited discovery … after [the] filing of the complaint to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999).  *See also Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (when true identity of defendant is not known before complaint is filed, a plaintiff "should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds"); *Zoosk Inc. v. Doe 1*, No. C 10-04545 LB, 2010 WL 5115670, at *2 (N.D. Cal. Dec. 9, 2010) (permitting plaintiff to serve early discovery on third-party internet service providers to discover identity of unknown Internet communicators).

The plaintiff must demonstrate good cause for earlier discovery.  *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  In evaluating whether a plaintiff establishes good cause to learn the identity of the defendants through early discovery, courts examine whether the plaintiff (1) identifies the unknown party with sufficient specificity that the court can determine that the party is a real person who can be sued in federal court, (2) recounts the steps taken to locate and identify the party, (3) demonstrates that the action can withstand a motion to dismiss, and (4) demonstrates a reasonable likelihood that the discovery will lead to identifying information that will permit service of process.  *Columbia*, 185 F.R.D. at 578-780.

### B.    Docket No. 20: Discovery from Microsoft Corporation

In Docket No. 20, Plaintiff moves the court for an order requiring non-party Microsoft Corporation to produce information regarding the Yahoo, Skype, and/or Outlook[7] accounts

---

[7] Plaintiff asserts that Skype and Outlook accounts are controlled by Microsoft Corporation. However, Plaintiff's request for an order requiring Microsoft to produce information about a

5

1 associated with Smith and McCandles.  Specifically, Plaintiff requests the accountholder's name,
2 address, phone number, birth date, other known email addresses, profile URL, driver's license
3 number, and Social Security number for the Skype accounts "juliet.smith85" and "marry.juliet33"
4 and the Outlook account "proproperty-lawchamber@outlook.com."  *See* Docket No. 20-2.  The
5 court finds that Plaintiff has made a sufficient showing to establish good cause to permit this early
6 discovery.

7 First, Plaintiff has identified Smith and McCandles with sufficient specificity that the court
8 can determine that they are real people who can be sued in federal court.  Specifically, Plaintiff
9 has demonstrated that Smith and McCandles communicated with Plaintiff through various means,
10 including email and Skype, requesting payment of fees associated with the delivery of the trunk.
11 Plaintiff identifies Smith as the owner of the Skype accounts ("juliet.smith85" and
12 "marry.juliet33") through which Smith and Plaintiff communicated and McCandles as the owner
13 of the Outlook account "proproperty-lawchamber@outlook.com" that sent messages to Klicpera's
14 email address.  Plaintiff has therefore accused Smith and McCandles of "specific acts of
15 misconduct that could only have been perpetrated by actual people, as opposed to a mechanical
16 process."  *G.N. Iheaku & Co. Ltd. v. Does 1-3*, No. C 14-02069 LB, 2014 WL 2759075, at *2
17 (N.D. Cal. June 17, 2014).  *Accord Zoosk*, 2010 WL 5115670, at *2 ("Zoosk identified the
18 possible Doe defendants with sufficient specificity by identifying the eight IP addresses using the
19 Twitter account 'Squirrel Juice'").

20 Second, Plaintiff has recounted the steps it has taken to locate and identify Smith and
21 McCandles.  All of the communications between Plaintiff and Smith and McCandles are alleged to
22 have occurred via email or Skype.  Plaintiff states that it requested identifying information from
23 Smith, including her driver's license and passport information but she refused to provide the
24 information.  Plaintiff also contacted McCandles for information about McCandles and Smith, but
25 McCandles "was vague or protective and would not provide any specific information."  Docket

---

*Yahoo* email account is plainly deficient.  Plaintiff does not explain why Microsoft would have information about another company's accounts.

6

1  No. 20 at 4-5. Plaintiff states that it "never could completely verify the true identification" of
2  Marry Juliet Smith nor "property attorney Mr. McCandles" and requires the requested information
3  from Microsoft in order to identify them. *Id.* at 3.

4  Third, Plaintiff has also pleaded at least its fraud claim with sufficient particularity. "A cause of action for fraud [under California law] requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages." *Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192 (9th Cir. 2001) (quoting *Wilkins v. Nat'l Broadcasting Co., Inc.*, 71 Cal.App. 4th 1066, 1082 (1999)). The Amended Complaint sufficiently alleges that the named and unknown defendants (including potentially Smith and McCandles) made misrepresentations to Plaintiff, "had no intention to deliver the consignment trunk[,] and created a scheme to defraud the Plaintiff," causing Plaintiff to be injured through the loss of his money. Am. Compl. at ¶¶ 127-135.

Finally, information about the true names and contact information for the owners of the Skype and Outlook accounts ostensibly belonging to Smith and McCandles could lead to identifying information that will permit service of process.

For the above reasons, the court finds that good cause exists to permit some limited early discovery of that information, and **grants** Plaintiff's motion for an order permitting Plaintiff to serve early discovery on Microsoft. Plaintiff may serve a third-party subpoena on Microsoft for the accountholder's name, address, phone number, birth date, other known email addresses, profile URL, or other information that identifies the accountholder for the Skype accounts "juliet.smith85" and "marry.juliet33" and the Outlook account "proproperty-lawchamber@outlook.com."

### C. Docket No. 20: Discovery from New Mexico

Also in Docket No. 20, Plaintiff moves the court for an order directing the New Mexico Department of Health to provide information about Smith's birth and family records.

While the first three factors in the *Columbia* standard are satisfied for the above-stated reasons, Plaintiff has not met the fourth factor by demonstrating that discovery from the State of

7

New Mexico is likely to lead to identifying information about Defendants or the unknown defendants. Plaintiff's motion is disjointed and incomplete, and contains almost no information justifying the discovery sought. For example, Plaintiff believes that Smith was born in Las Cruces on February 10, 1981, but gives no explanation or basis for this belief. Docket No. 20-4 at 2. Nor has Plaintiff explained why a subpoena directed to the State of New Mexico is the proper means through which to discover information regarding Plaintiff's birth records. Without more, the court cannot conclude that there is good cause to permit early discovery. The court therefore **denies** Plaintiff's motion for an order permitting Plaintiff to serve early discovery on the State of New Mexico.

### D. Docket No. 18: Discovery from Banks

In Docket No. 18, Plaintiff moves the court for an order requiring the banks involved in transactions with Defendants Woodman and PT to provide information about accounts believed to be associated with those Defendants. Docket No. 18 at 1. Plaintiff also seeks information from Wells Fargo in order to identify and contact AIG. Docket No. 18 at 3.

With respect to the first *Columbia* factor, Plaintiff has demonstrated that Woodman and PT are real individuals or entities that can be sued in federal court. Plaintiff has alleged that Woodman and PT communicated with Plaintiff regarding the shipment of the trunk. They provided Plaintiff with information about requested payments, responded to his inquiries, and accepted the payments that Plaintiff sent. *See, e.g.*, Compl. at Ex. 10 (email from Lawrence Woodman from PT updating Plaintiff on the shipment of the trunk and giving instructions for payment of customs fees). Plaintiff has also demonstrated that AIG is a real entity that can be sued in federal court, as Plaintiff has alleged that he completed a payment to a Wells Fargo account owned by AIG.

Second, Plaintiff has recalled the steps it has taken to locate Woodman and PT. Plaintiff hired a British process server who attempted to serve Woodman and PT at the British address provided by Woodman in his emails with Plaintiff, and attempted to contact those Defendants using the email addresses through which Plaintiff communicated with them and using the British phone numbers listed in Woodman's emails. Docket No. 18 at 4-5. The process server was

8

1    unable to locate Woodman or PT using any of these means, and in fact found that the email

2    addresses and phone numbers were no longer in use and the address led to residential flats that

3    were not connected to Woodman or PT. *Id.* at 5.

4    However, Plaintiff has not sufficiently recounted the steps it took to locate and identify

5    AIG. Plaintiff explains that it searched publically-available documents and discovered that "a

6    company listed as AIG Imports and Exports was established in February 22, 2013 in Bronx, New

7    York." Docket No. 18 at 3. Plaintiff attaches to its motion an unverified, unexplained document

8    that appears to be a printout from the New York State Department of Corporations database

9    showing an address at 3673 3rd Avenue in the Bronx for "AIG Imports & Exports Corporation."

10   Docket No. 18 at Ex. A. Plaintiff states that it needs early discovery "to establish a connect [sic]

11   between the bank deposit tendered and this potential defendant." *Id.* at 3. But Plaintiff has a

12   corporate address for AIG Imports that is ostensibly registered with the State of New York. The

13   second *Columbia* factor is "aimed at ensuring that plaintiffs make a good faith effort to comply

14   with the requirements of service of process and specifically identifying defendants." *Columbia*,

15   185 F.R.D. at 579. Plaintiff has not met this factor because it has not attempted to serve AIG at

16   this address, or explained why it is not possible to serve AIG at this address. The court therefore

17   finds that Plaintiff has not demonstrated good cause to subpoena Wells Fargo for information

18   about AIG's location in order to serve AIG, because Plaintiff may be able to serve AIG without

19   this discovery.

20   As to the third *Columbia* factor, as discussed above, Plaintiff has sufficiently pleaded at

21   least its fraud claim against PT, Woodman, and the unknown Defendants.

22   Analysis of the fourth *Columbia* factor—i.e., whether the discovery requested is likely to

23   lead to identifying information that will permit service of process—requires the court to decipher

24   the disorganized statements in Plaintiff's numerous filings. The motion for early discovery does

25   not specify the banks from which Plaintiffs intends to seek early discovery. However, attached to

26   the motion are three proposed orders directing Santander Bank, Wells Fargo, and Bank of America

27   to provide documents to Plaintiff. *See* Docket Nos. 18-1 to 18-3. *See also* Docket Nos. 17-2 to

28   17-7 (redacted and unredacted copies of same proposed orders). The court therefore understands

9

1  Plaintiff to be requesting early third-party discovery from only these three banks, for one account

2  number per bank.  Plaintiff's motion does not connect these three banks accounts to the allegations

3  in the Amended Complaint, but the court has reviewed the Amended Complaint and finds that the

4  allegations therein sufficiently draw a nexus between the three banks, the listed account numbers,

5  and the named Defendants or unknown Defendants in this action:

- **PT's Bank of America Account.**  On April 22, 2013, Plaintiff paid $11,500 to Bank of America account #483042739956, which purportedly belonged to PT.  Am. Compl. at ¶ 29.

- **PT's Santander (Sovereign) Bank Account.**  On May 28, 2013, Plaintiff paid $28,455 to Sovereign Bank account #23110098934, purportedly belonging to PT.  Am. Compl. at ¶ 61; Compl. at Ex. 40 (Sovereign Bank account number ending -8934); Docket No. 17-2 at ¶ 1 (requesting information for Santander/Sovereign bank account number 23110098934).

- **AIG Imports' Wells Fargo Account.**  On May 2, 2013, PT's agent Woodman asked Plaintiff to pay a fee to an entity called AIG Imports and Exports.  The following day, Plaintiff sent payment of $23,000 from Plaintiff's Wells Fargo account to AIG Imports and Export's bank account.  *Id.* at ¶¶ 41-42; Compl. at Ex. 24 (Wells Fargo transaction receipt a withdrawal from an unspecified account to an account ending -4938).  It appears that Plaintiff does not have the full account number for this account, because even Plaintiff's proposed order does not reference it.

17  As discussed above, because Plaintiff has unjustifiably failed to attempt service on AIG on its

18  known address in the Bronx, Plaintiff has not demonstrated good cause for early discovery from

19  Wells Fargo for information about AIG.[8]  However, with respect to Bank of America and

20  Santander Bank, Plaintiff has satisfied the *Columbia* factors and the court finds that good cause

21  exists for some early discovery from those banks.

22  However, Plaintiff's requests are overbroad: Plaintiff seeks (1) the personal and/or

23  corporate names and the addresses of the owners of the account numbers; (2) names and addresses

24  for any accounts "associated with Defendant Lawrence Woodman, PT Express and Security

---

[8] Even if Plaintiff had established the second *Columbia* factor for the discovery sought from Wells Fargo, Plaintiff would not have established the fourth factor, because Plaintiff's request for information from Wells Fargo identifies only the last four digits of an account number.  Without more, a subpoena on Wells Fargo associated with the account ending "-4938" is unlikely to lead to useful information.

10

1    Company, and/or AIG"; (3) copies of all statements sent to and received from the owners of the

2    identified account number for the period between April 23, 2013 and July 23, 2013; (4) any emails

3    or mail sent to or received from the owners of the identified account number; and (5) any

4    information regarding the receipt and distribution of $28,455 by the Santander bank account on

5    May 30, 2013 and $11,500 by the Bank of America account on April 22, 2013.  Only the first and

6    fifth category of information is properly requested.  *Compare G.N. Iheaku & Co. Ltd. v. Does 1-3*,

7    No. C 14-02069 LB, 2014 WL 2759075, at *3 (N.D. Cal. June 17, 2014) (in case where plaintiff

8    wired $270,000 to bank account of suspected scammer whose true name was unknown, granting

9    motion for early discovery in form of subpoena on bank, but noting that plaintiff's "requests for

10   production of documents that are more suited for the merits discovery stage and exceeds the scope

11   sufficed for learning the identities of the Doe defendants" and therefore limiting discovery to

12   contact information and information about specifically identified money transfers on certain

13   dates); *Specialized Bicycle Components, Inc. v. Barton*, No. C10-05725 HRL, 2011 WL 1599653,

14   at *1 (N.D. Cal. Apr. 28, 2011) (permitting plaintiff bicycle manufacturer to subpoena website for

15   early discovery about contact and sales information for seller of counterfeit bicycle components,

16   but not permitting early discovery of bank account information).  The other information Plaintiff

17   seeks is not directed toward discovering the identities and contact information for the Defendants,

18   and is more properly sought in the course of ordinary rather than early discovery.

19          The court therefore **grants** Plaintiff's motion for early discovery from Santander Bank and

20   Bank of America.  Plaintiff may serve a third party subpoena on Santander Bank for the following

21   information associated with account number 23110098934: (1) documents sufficient to show

22   names, addresses, and other contact information of the accountholder; and (2) documents

23   sufficient to show any payments or deposits made to the account, include via wire transfer, of

24   $28,455 on May 30, 2013.  Plaintiff may serve a third party subpoena on Bank of America for the

25   following information associated with account number 483042739956: (1) documents sufficient to

26   show names, addresses, and other contact information of the accountholder; and (2) documents

27   sufficient to show any payments or deposits made to the account, include via wire transfer, of and

28   $11,500 on April 22, 2013.  Plaintiff's motion is **denied** with respect to early discovery from

11

Wells Fargo.

### III.   MOTIONS TO SEAL

Associated with Plaintiff's requests for early third-party discovery are several motions to seal.  [Docket Nos. 17, 20, 24, 25.]  Civil Local Rule 79-5(b) states that "no document may be filed under seal (i.e., closed to inspection by the public) except pursuant to a court order that authorizes the sealing of the particular document, or portions thereof.  A sealing order may issue only upon a request that establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law (hereinafter referred to as 'sealable')."  "The request must be narrowly tailored to seek sealing only of sealable material, and must conform with Civil L.R. 79-5(d)."  *Id.*

In Docket No. 17, Plaintiff seeks to seal the Sovereign Bank account number, the Bank of America account number, and the last four digits of the Wells Fargo account number as they appear in the "proposed orders" Plaintiff attached as exhibits to Docket No. 18.  However, Plaintiff makes no contention that this material is confidential, privileged, protectable as a trade secret, or otherwise sealable.  Instead, Plaintiff simply notes that the exhibits will "provide identification and address information for conduct [sic] process serving."  Docket No. 17-1 at 2.  Because Plaintiff has failed to meet its burden of showing that the material sought to be sealed is sealable, the court **denies** Docket No. 17.

Docket No. 20, which is Plaintiff's motion for third-party early discovery from Microsoft and the State of New Mexico, also appears to include a request to seal.[9]  The information that Plaintiff seeks to seal is the birth date for Marry Juliet Smith.  However, as with Docket No. 17, Plaintiff makes no contention that Smith's birth date is confidential, privileged, protectable as a trade secret, or otherwise sealable.  To the extent that Docket No. 20 contains a motion to seal, it is **denied.**

Docket Nos. 24 and 25 are styled as "Protection and Document Sealing Orders" purporting

---

[9]   There is no motion to seal associated with Docket No. 20, but Plaintiff has submitted both a redacted proposed order and an unredacted proposed order, and in Docket No. 25, Plaintiff moves to seal the unredacted proposed order attached to Docket No. 20.

to relate to Plaintiff's request that the court permit early discovery from third parties. But these "motions" are simply the court's model protective order, followed by Plaintiff's declaration that it "promises" that it will not use material designated as "Confidential" under the protective order for inappropriate purposes. *See, e.g.* Docket No. 24-1 at ¶ 3 ("I promise that I will use any and all 'Confidential' or 'Confidential - For Counsel Only' information, as defined in the Protective and Document Sealing Order, given to me only in a manner authorized by the Protective and Document Sealing Order, and only to assist counsel in the litigation of this matter."). The model protective order is simply an exemplar for parties litigating in this district, not an order with any governing authority. Plaintiff's declaration is meaningless because no documents have been designated as "Confidential" or "Confidential - For Counsel Only"—because there is no stipulated protective order under which such designations may be made. Furthermore, Docket Nos. 24 and 25 refer back to Docket Nos. 17, 18, and 20, and seek to seal the same information that Plaintiff's redundant earlier-filed motions to seal covered, i.e., the account numbers for the Santander, Wells Fargo, and Bank of America accounts and the alleged birth date of Marry Juliet Smith. As before, Plaintiff makes no contention that this material is sealable. Docket Nos. 24 and 25 are therefore **denied.**

### IV.   MOTION TO EXTEND TIME FOR SERVING DEFENDANTS

Plaintiff moves to extend time for serving Defendants PT and Woodman. [Docket No. 34.] Federal Rule of Civil Procedure 4(m) provides: "If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). *See also* Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect.").

Plaintiff's motion recounts Plaintiff's many efforts to serve PT and Woodman using the

British phone numbers and addresses provided on the emails those Defendants sent to Plaintiff between April and July of 2013. Plaintiff hired a British process server to investigate the phone numbers and addresses; the process server reported to Plaintiff that those addresses and numbers did not exist or did not lead to PT or Woodman. *See* Docket No. 34 at 2-6. Given these attempts to contact PT and Woodman, and given that Plaintiff's motions for early discovery are directed to uncovering the information about the identities of and contact information for these Defendants, the court finds that there is good cause for Plaintiff's failure to serve Defendants PT and Woodman within 120 days of the filing of the complaint.

Accordingly, the court **grants** Plaintiff's motion and extends the time for service of the pleadings on Defendant PT and Woodman to 120 days from the date of this order.

## V.    CONCLUSION

To summarize, Docket No. 18 is **granted in part and denied in part** as follows: Plaintiff may serve third-party subpoenas on Santander Bank and Bank of America for only the limited information enumerated above, but Plaintiff may not serve a third-party subpoena on Wells Fargo.

Docket No. 20 is **granted in part and denied in part** as follows: Plaintiff may serve a third-party subpoena on Microsoft for information about the Skype accounts "juliet.smith85" and "marry.juliet33" and the Outlook account "proproperty-lawchamber@outlook.com," but not any Yahoo accounts. Plaintiff may not serve the State of New Mexico for Smith's birth records.

Docket Nos. 20, 24, and 25 are **denied**, and Docket No. 34 is **granted.**

**Plaintiff must include a copy of this order with any third-party subpoena served pursuant to this order.** The court notes that this order does not preclude Microsoft, Santander Bank, or Wells Fargo from contesting any discovery served by Plaintiff based on undue intrusion, burden, or other grounds. *See* Fed. R. Civ. P. 26, 45(c)(3).

**IT IS SO ORDERED.**

Dated: July 27, 2015

_____
Donna M. Ryu
United States Magistrate Judge